IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CARLY M.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:22-CV-00014 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Carly M. ("Carly") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled prior to November 12, 2019 and therefore ineligible for Supplemental Security Income ("SSI") prior to that date under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f. Carly alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess her mental and physical impairments and to assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 20) and **DENYING** Carly's Motion for Summary Judgment (Dkt. 14).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Carly failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Carly filed for SSI in February 2018, claiming that her disability began on September 13, 2015,[3] due to dislocated kneecap, arthritis, gout, fibromyalgia, type II diabetes, hernia, depression, anxiety, and ADD. R. 88–89, 105. The state agency denied Carly's applications at the initial and reconsideration levels of administrative review. R. 88–101, 104–118. On April 15, 2020, ALJ Joseph Scruton held a hearing to consider Carly's claim for SSI. R. 43–75. On May

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] At the hearing before the ALJ, Carly amended her alleged onset date to February 20, 2018. R. 47.

2

22, 2020, the ALJ entered his decision analyzing Carly's claim under the familiar five-step process[4] and finding Carly became disabled on November 12, 2019.[5] R. 125–137. On December 21, 2020, the Appeals Council granted Carly's appeal as it related to her disability before November 12, 2019. R. 143–45. On June 9, 2021, the ALJ held another hearing to consider Carly's claim for SSI before November 12, 2019. R. 78–87. Counsel represented Carly at the hearing, which included testimony from vocational expert Jeannie Deal. On June 30, 2021, the ALJ entered his decision analyzing Carly's claim and denying her claim for benefits before November 12, 2019. R. 17–34.

The ALJ found that Carly suffered from the severe impairments of osteoarthritis of the right knee, status-post reconstruction of ligament, left knee arthritis, osteoarthritis, fibromyalgia, carpal tunnel syndrome, diabetes mellitus, gout, irritable bowel syndrome, depression, and anxiety. R. 20. The ALJ found Carly was mildly limited in the broad functional areas of understanding, remembering, and applying information, interacting with others, and adapting or managing oneself. R. 22–23. The ALJ found Carly was moderately limited in the broad functional areas of concentrating, persisting, or maintaining pace. R. 23.

The ALJ determined that Carly's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 20. The ALJ specifically

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Carly was 38 years old on her alleged amended onset date, making her a younger person under the Act. R. 31.

considered listing 1.18 (abnormality of a major joint(s) in any extremity), SSR 12-2P[6] (fibromyalgia), listing 11.14 (peripheral neuropathy), SSR 14-2P (diabetes mellitus), listing 14.09 (inflammatory arthritis), listing 5.06 (inflammatory bowel disease), listing 5.08 (weight loss due to any digestive disorder), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.08 (personality and impulse-control disorders).

The ALJ determined that Carly became disabled on November 12, 2019, but before that date she retained the residual functional capacity ("RFC") to perform sedentary work. R. 24. Carly could occasionally climb stairs or ramps, balance, stoop, crouch, push or pull with the lower extremities, and perform overhead reaching bilaterally. Id. Carly could never climb ladders or scaffolds, crawl, or kneel. Id. Carly needed to avoid concentrated levels of exposure to extreme cold temperatures or to vibrations. Id. Carly could perform simple, routine, non-complex tasks in working settings presenting routine work situations and changes, with ordinary breaks at approximately two-hour intervals. Id. Carly could not have exposure to dangerous hazards, such as working around unprotected heights or moving machinery parts. Id. The ALJ determined that Carly had no past relevant work but could have performed jobs that exist in significant numbers in the national economy, such as final assembler, order clerk, and electronics assembly inspector. R. 31–32. Carly appealed the ALJ's decision, and the Appeals Council denied her request for review on November 24, 2021. R. 1–4.

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

## ANALYSIS

Carly alleges that the ALJ failed to properly assess both her mental impairments and her physical impairments and failed to consider her subjective evidence.

**A. Medical History Overview**

1. <u>Medical Treatment</u>

    a. Physical Health

Carly has a history of knee pain and instability. On May 4, 2018, she had surgery on her right knee that included PCL/ACL reconstruction, MCL/LCL repair and reconstruction, popliteus and PFL ligament repair and reconstruction, extensive peroneal nerve neurolysis and decompression, arthroscopy with partial medial meniscectomy, and major synovectomy. R. 679. Post-surgery, doctors prescribed physical therapy, but Carly did not complete physical therapy as prescribed. R. 643, 873. In a June 2018 follow-up, doctors instructed Carly that she could return to weightbearing as tolerated in her knee brace. R. 891. Carly continued to experience pain even after her surgery and by February 2019, Carly reported that her right knee pain was unmanageable, and doctors found that she had progressive arthrosis and bone loss. R. 1033. In May 2019, Carly's doctor concluded that she would require bilateral knee replacements and that she had limited use of both legs for ambulation or prolonged standing. R. 1018, 1026.

Carly has been diagnosed with irritable bowel syndrome, esophageal reflux, and epigastric distress. R. 834. Her providers prescribed medication to help with her symptoms. R. 834. Carly has also been diagnosed with rotator cuff tendinitis, and she was referred to physical therapy for strengthening and prescribed medication. R. 853, 859, 862.

    b. Mental Health

5

Carly has a history of depression and anxiety. Carly's providers noted occasional tangentiality of thought processes, impaired attention and concentration, and fair insight and judgment. R. 822, 843, 975, 979, 983. Carly was prescribed medication for her mental health impairments. R. 822, 843–44. Carly was also encouraged to pursue outpatient counseling. R. 989.

2.  Medical Opinions

In September 2018, state agency physician Wyatt S. Beazley, M.D., reviewed the record and found Carly could perform light level lifting and carrying. R. 88–101. The ALJ found this opinion unpersuasive. R. 29–30. The ALJ reasoned that "evidence received at subsequent levels of review establishes greater limitations[.]" R. 30. State agency psychologist Howard Leizer, Ph.D., found Carly remained capable of performing unskilled work despite her mental health impairments. R. 98. The ALJ found this opinion persuasive. R. 30. The ALJ reasoned that Carly's "mental status examinations showed stable findings." Id.

In January 2019, state agency physician Brian Strain, M.D., reviewed the record and found Carly could do sedentary work with certain limitations to pushing or pulling, climbing, kneeling, crawling, overhead reaching, and concentrated exposure to environmental factors. R. 113–15. The ALJ found this opinion mostly persuasive. R. 29. The ALJ reasoned that based on Carly's "persistent pain complaints over the relevant period, . . . she could have no exposure to dangerous hazards, and could no more than occasionally perform overhead reaching bilaterally." Id. State agency psychologist Dr. Leizer found Carly's mental health impairments non-severe but noted that Carly had not provided enough information for him to evaluate her limitations in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentration, persistence, or maintaining pace, and

6

adapting or managing oneself. R. 111–12. The ALJ noted that "there is no mental assessment to evaluate at the reconsideration level because the psychological consultant declined to evaluate the claimant's mental functioning on technical grounds." R. 30.

In a letter dated May 6, 2019, Carly's orthopedic surgeon, Jesse Seamon, M.D., concluded that Carly was severely disabled and had limited use of her legs for ambulation or prolonged standing. R. 1026. The ALJ found Dr. Seamon's statement that Carly was disabled not persuasive. R. 30. The ALJ reasoned that the statement "is a statement on an issue reserved to the Commissioner and is therefore inherently neither valuable nor persuasive under the regulations." R. 30. The ALJ found Dr. Seamon's statement about Carly's limited use of her legs to be partially persuasive. Id. The ALJ reasoned that Dr. Seamon's statement "is consistent with the claimant's reports of knee pain with imaging and physical examination abnormalities[,]" but "Dr. Seamon did not identify a medical need for a hand-held assistive device" in this letter. Id.

### B. Physical Impairments and Substantial Evidence

Carly argues that the ALJ "relied solely on Dr. Seamon writing a prescription for a cane/walker on November 12, 2019, in finding that [she] did not become disabled until November 12, 2019." Pl.'s Br. at 28, Dkt. 15. She further argues that her issues with her knees require "greater functional restrictions . . . than can be accommodated by the limitations in the pre-November 12, 2019 RFC findings." Id. at 30. Carly points to her inability to sit for more than an hour at a time and the need to elevate her legs for two hours per day. Id. at 30. Carly also states that "evidence of record establishes significant instability, pain[,] and swelling in [her] knees and her need for a cane for ambulation and balance began well before November 12, 2019[.]" Id. The Commissioner counters that Carly "fails to provide probative, objective

7

evidence to support functional limitations that would preclude her from all work" during the relevant period. Def.'s Br. at 10, Dkt. 21.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ properly explained how the RFC accounts for Carly's physical impairments and provided the necessary medical and non-medical facts and evidence to support

8

his conclusions. Addressing Carly's ability to perform work in light of her knee issues, the ALJ acknowledged Carly's complaints of pain and need for medication. R. 26–27. The ALJ further noted that by November 12, 2019, her doctors had prescribed a cane and walker. R. 27. However, the ALJ pointed to physical examinations prior to November 12, 2019, where Carly had good stability, normal range of motion, and full strength against resistance. R. 26–27. The ALJ also considered the opinions of the state agency physicians and found that Carly required more restrictions than the state agency physicians recommended. R. 29–30. Contrary to Carly's assertion, the ALJ considered more than just the prescription of a cane and walker in determining whether Carly was disabled before November 12, 2019.

Carly argues that the ALJ "ignore[d] the rationale" behind Dr. Seamon's decision to prescribe Carly with a cane and walker in November 2019. Pl.'s Br. at 28, Dkt. 15. Contrary to Carly's assertion, the ALJ did not ignore this evidence. The ALJ does not have to address every piece of inconsistent evidence, Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015); see also Brittani v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made.

Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14,

2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Carly has done no more than question the ALJ's conclusion. Without more, Carly has not shown that the ALJ's RFC is not supported by substantial evidence.

Contrary to Carly's contentions, the ALJ provided a detailed summary of Carly's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Carly's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### C. Mental Impairments under SSR 96-8P

Carly argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Carly asserts that the ALJ failed to explain how his RFC findings account for Carly's moderate limitations in concentration, persistence, or pace. Pl.'s Br. at 31, Dkt. 15. Carly further argues that because the ALJ did not consider her moderate limitations, the ALJ failed to ask the vocational expert proper hypothetical questions. Id. at 31–32. Carly also argues that the ALJ did not address her ability to sustain work. Id. at 33.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion

10

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176

11

(emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ explained why Carly's moderate limitations in concentration, persistence, or pace did not translate into a limitation in the RFC beyond that imposed. The ALJ specifically acknowledged that Carly had tangential thoughts at times and impaired attention and concentration. R. 22. However, the ALJ noted that "treatment notes otherwise describe the claimant as alert and oriented, without any obvious distractibility, lethargy, or slow thinking, speech, or movements." Id. The ALJ also noted that Carly's "activities of daily living, such as caring for her children, also demonstrate at least some capability in this area." R. 23. Contrary to Carly's argument, the ALJ explained his reasoning and the RFC, including specific references to the medical records and opinions. The ALJ explained that Carly's moderate limitations were accommodated with a restriction to simple, routine, non-complex tasks and to limitations concerning hazards.[7] Id.

Carly further asserts that because the ALJ did not consider her moderate limitations in concentration, persistence, or pace, the ALJ failed to "pose any hypothetical questions to the vocational expert that included these limitations." Pl.'s Br. at 31–32, Dkt. 15. At the hearing, the ALJ asked the vocational expert, Jeannie Deal, the following question:

> So, Ms. Deal, if we have an individual[,] age in her late thirties to early forties . . . [who] would have concentration, persistence and maintaining a pace adequate for simple, routine tasks that would be non-complex tasks in work settings presenting routine work situations and changes. . . . [O]rdinary and regularly scheduled breaks would be afforded at approximately two-hour intervals and no exposure to hazards such as working around unprotected heights or moving machinery,

---

[7] Carly argues that the ALJ failed to address her ability to sustain work over an eight-hour day. Pl.'s Br. at 33, Dkt. 15. The purpose of the RFC is to assess "an individual's ability to do sustained work-related physical and metal activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2. Here, the ALJ determined that Carly could perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the evidence supporting the RFC determination.

12

>moving machinery parts, things of that nature in terms of dangerous hazards. Would there be work you could identify for such a hypothetical individual that exists in the U.S. economy?

R. 81–82. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Here, the ALJ based his hypothetical on the evidence in the record. As discussed, the ALJ acknowledged that the record indicated that Carly had difficulty with concentration, persistence, or pace. Those limitations were addressed in the ALJ's hypothetical when asking for jobs that had non-complex tasks in routine work situations with no changes and avoided dangerous hazards. The ALJ's hypothetical limitations were supported by the record and considered Carly's impairments.

Carly's assertion that the ALJ did not explain how the RFC findings address or accommodate her moderate limitations with concentration, persistence, or pace is unfounded. The ALJ provided a lengthy narrative discussion of Carly's allegations, treatment records, and opinion evidence regarding her mental health limitations. The ALJ considered Carly's allegations of difficulty being around people and with concentration, persistence, and pace at length in his opinion. The ALJ explained how his RFC is supported by Carly's mental health treatment records and carefully analyzed each facet of her mental health impairments. Accordingly, I recommend finding that the ALJ's assessment of Carly's impairments was sufficient under SSR 96-8P.

### D. Subjective Allegations

Carly argues that the ALJ's assessment of her allegations is not supported by substantial evidence. Pl.'s Br. at 25, Dkt. 15. Carly does not specifically cite to any reason why the ALJ erred in his assessment of her subjective allegations.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[8] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ found that Carly's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 26. However, the ALJ found that Carly's

---

[8] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the record. Id. The ALJ noted that Carly's "pain complaints [for her knee] were conservatively managed with steroids and muscle relaxers" and that she had normal range of motion and full strength at her appointments. R. 26–27. The ALJ also noted that Carly had normal range of motion and strength in her hands and shoulders, and that she appeared in no acute distress from her diabetes and irritable bowel syndrome. R. 27–28. Carly does not point to any particular case law or evidence in the medical record to question the ALJ's conclusions. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Carly's subjective complaints with substantial evidence, and that Carly is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Thomas T. Cullen, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

    Entered: January 6, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge