IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CARLY M., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00014 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KILOLO KIJAKAZI, | ) | By:   Hon. Thomas T. Cullen |
| Acting Commissioner of Social Security, | ) |    United States District Judge |
| | ) | |
| Defendant. | ) | |

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge,[1] for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Ballou filed a report and recommendation ("R&R") on January 6, 2023, recommending that this court deny Plaintiff Carly M.'s ("Carly") summary judgment motion, grant the Commissioner's summary judgment motion, and affirm the Commissioner's final decision. Carly has filed objections to the R&R and this matter is now ripe for the court's consideration. For the reasons discussed below, the court will overrule Carly's objections, adopt Judge Ballou's R&R in its entirety, and grant the Commissioner's summary judgment motion.

## I.   BACKGROUND

On February 20, 2018, Carly filed an application for Supplemental Security Income ("SSI") benefits pursuant to Title XVI of the Social Security Act ("the Act"). (R. 88); *see* 42

---

[1] Judge Ballou was confirmed as a United States District Judge for this court on March 7, 2023.

U.S.C. §§ 1381–1383f. In her application, Carly alleged that she was disabled as of September 13, 2015 due to a "dislocated kneecap, arthritis, gout, fibromyalgia, type II diabetes, hernia, depression, anxiety, [and] ADD." (*See* R. 88–89, 105.) Disability Determination Services ("DDS") denied Carly's application at the initial and reconsideration levels of state agency review. (R. 88–101, 104–18.) Carly then requested a hearing before an Administrative Law Judge (R. 167–70) and, on April 15, 2020, appeared with her attorney before ALJ Joseph Scruton ("the ALJ") (the "April 15 Hearing"). (R. 43–75.) Both Carly and a vocational expert, Barry Hensley, Ph.D., testified at the hearing. (*Id.*) In her pre-hearing brief and at the April 15 Hearing, Carly amended her alleged onset date to February 20, 2018, to coincide with her protective filing date. (R. 47, 80, 387.) In a written decision dated May 22, 2020 (the "May 22 Decision"), the ALJ determined that Carly was disabled within the meaning of the Act *as of* November 12, 2019, but that she was *not* disabled *prior to* November 12, 2019. (R. 125–37.)

Carly requested Appeals Council review of the ALJ's finding that she was not disabled prior to November 12, 2019,[2] and her appeal was granted in part. (R. 144.) The Appeals Council affirmed the ALJ's May 22 Decision, insofar as it found that Carly was disabled beginning on November 12, 2019, but vacated it "only with respect to the issue of disability before November 12, 2019," remanding the case to the ALJ for reconsideration of that timeframe. (*Id.*) Carly's second hearing before the ALJ was held on June 9, 2021. (R. 76–87.)

---

[2] At its core, this case is about whether Carly is entitled to SSI benefits for the approximately 21-months' time between February 20, 2018 (Carly's alleged disability onset date) and November 12, 2019 (the earliest date on which the ALJ found her disabled).

At the June 9 hearing, vocational expert Jeannie Deal testified;[3]  Carly was present with her attorney but did not testify. (*Id.*)

In the ALJ's June 30, 2021 post-remand written decision (the "June 30 Decision"), he again denied Carly's claim for disability benefits prior to November 12, 2019. (R. 17–34.)[4] In so doing, the ALJ found that, since the February 20, 2018 date of her SSI application, Carly suffered from several severe impairments—both physical and mental—consisting of osteoarthritis of the right knee, status-post reconstruction of ligament, left knee arthritis, osteoarthritis, fibromyalgia, carpal tunnel syndrome, diabetes mellitus, gout, irritable bowel syndrome ("IBS"), depression, and anxiety. (R. 20 (citing 20 C.F.R. § 416.920(c).) He found that these severe impairments significantly limited Carly's ability to perform basic work activities. (*Id.*)

He also considered her non-severe conditions. (*Id.*) For example, he found that her headaches were non-severe, but nevertheless accounted for them in his Residual Functional Capacity ("RFC") finding. (*Id.*) He concluded that her borderline obesity was not a severe impairment in this case but considered it in combination with Carly's other medically determinable impairments in evaluating her RFC. (*Id.*) He also considered all of Carly's mental-health diagnoses when making his RFC assessment—regardless of their severity—along with their reasonable limiting effects, without regard to "the diagnostic label used at one time or another" by various medical providers. (*Id.*) His mental-health considerations included Carly's

---

[3] After having the opportunity to review Ms. Deal's CV or resume, Carly did not object to her testifying at the hearing in her capacity as a vocational expert. (R. 78.)

[4] This June 30, 2021 ALJ Decision is operative for judicial review purposes since it became the Commissioner's final decision on Carly's application.

mild limitation in terms of understanding, remembering, and applying information, as well as a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a no-more-than-mild limitation in terms of adapting or managing herself. (R. 22–23.)

Ultimately, the ALJ determined that, since February 12, 2018, Carly "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)." (R. 20.)[5] In doing so, he specifically considered listings and rulings covering the gamut of Carly's conditions and allegations:

- Listing 1.18                          (abnormality of a major joint(s) in any extremity);
- Social Security Ruling 12-2p          (fibromyalgia);
- Listing 11.14                         (peripheral neuropathy);
- Social Security Ruling 14-2p          (diabetes mellitus);
- Listing 14.09                         (inflammatory arthritis);
- Listing 5.06                          (inflammatory bowel disease);
- Listing 5.08                          (weight loss due to any digestive disorder);
- Listing 12.06                         (anxiety and obsessive-compulsive disorders); and
- Listing 12.08                         (personality and impulse-control disorders).

(R. 20–23.) After "careful consideration of the entire record," the ALJ concluded that Carly had the RFC to perform sedentary work under certain conditions. Specifically, he concluded that, *beginning on November 12, 2019*, Carly had the RFC to perform sedentary work with additional limitations. (*See* R. 31 (citing 20 C.F.R. § 416.967(a) (defining sedentary work).) Relying on this conclusion, the ALJ determined that, *before* November 12, 2019, Carly could

---

[5] The ALJ followed the Social Security Administration's five-step sequential process to determine whether Carly was disabled and when, which is thoroughly explained in his June 30 Decision. *See* 20 C.F.R. § 416.920(a).

not have performed any past relevant work since those jobs all exceeded her RFC, but that she was nevertheless capable of adjusting to, and could have performed, other jobs that exist in significant numbers in the national economy, including Final Assembler, Order Clerk, and Electronics Assembly Inspector. (R. 31-33 (citing the Medical Vocational Guidelines, C.F.R. Part 404, Subpart P, Appendix 2, and referencing the vocational expert's testimony).) But for the time period *on and after* November 12, 2019, the ALJ credited the vocational expert's opinion and found that, when taking into account Carly's age,[6] education, work experience, and RFC, there were no jobs in the national economy that Carly could perform. (R. 33.) As a result, the ALJ concluded that Carly was disabled under the Act beginning on November 12, 2019, but not before then. (R. 34.)

Following this decision, Carly again requested Appeals Council review and remand, but her request was denied. (R. 1–3.)   The ALJ's June 30 Decision, therefore, became the Commissioner's final decision. (*Id.*) On January 12, 2022, Carly filed the instant suit challenging the Commissioner's final decision. (Compl. [ECF No. 2].) By standing order, the case was referred to Judge Ballou for a recommended disposition. W.D. Va. Standing Order 2021-21 (Oct. 12, 2021). Carly filed a motion for summary judgment and the Commissioner's summary judgment motion followed. (ECF Nos. 14, 22.) On January 6, 2023, Magistrate Judge Ballou filed his R&R that the court grant the Commissioner's motion and deny Carly's. (ECF No. 22.) Carly filed timely R&R objections (ECF No. 23) making this matter is ripe for review.

## II.   STANDARDS OF REVIEW

---

[6] Carly was 38 years old on her alleged amended onset date, making her a "younger person" under the Act. (R. 31.) *See* 20 C.F.R. § 404.1563(c).

### A. District Court Review of Magistrate Judge Decision

Federal Rule of Civil Procedure 72(b) provides that, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." The objection requirement set forth in Rule 72(b) is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of the objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id.* The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations," de novo review is not required. *Diprospero v. Colvin*, No. 5:13-cv-00088-FDW-DSC, 2014 WL

1669806, at *1 (W.D.N.C. 2014) (cleaned up) (quoting *Howard Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." *Camper v. Comm'r of Soc. Sec.*, No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), *aff'd*, 373 F. App'x 346 (4th Cir.); *see Midgette*, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only those portions of the report or specified proposed findings or recommendations to which objection is made.") (cleaned up). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Technologies*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012); *see also Arn*, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .").

Simply put, rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Objections that simply reiterate arguments raised before the magistrate judge are construed as general objections to the entirety of the report and recommendation. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in *Veney*:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and

runs contrary to the purposes of the Magistrates Act." *Howard* [*v. Sec'y of Health & Human Servs.*], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. *Id.*

## B.  Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. *Perales*, 402 U.S. at 401; *Laws*, 368 F.2d at 642. "It means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Perales*, 402 U.S. at 401.

### III.    CARLY'S OBJECTIONS[7]

The objection process is not Carly's opportunity for a "second bite at the apple." *Veney*, 539 F. Supp. 2d at 846. Many of her objections could (and should) be overruled because they either improperly reiterate arguments that were made to, and thoroughly addressed by, the magistrate judge (*compare* Carly's Br. Supp. Mot. Summ. Judg. [ECF No. 15] *with* Carly's R&R Objs. [ECF No. 23]) or ask this court merely to reweigh the evidence in her favor, particularly as it relates to Carly's knees. Nevertheless, the court will endeavor to address each of Carly's objections. Broadly speaking, Carly objects that the magistrate judge erred in finding no substantial error in the ALJ's findings regarding her physical conditions, mental conditions under Social Security Rule 96-8p, and subjective complaints. Within these broader categories are each of Carly's nine subheading objections, some of which contain multiple arguments. In their totality, Carly's objections basically take issue with every opinion of the magistrate (and ALJ) that runs counter to her position. Carly's objections are reiterated verbatim as the subheadings for sections III(A)(1)–(C)(9) below.

### A.  Objections Related to Physical Impairments

**1.   The [R&R] erred in concluding the ALJ properly explained how the RFC accounts for plaintiff's physical impairments and support his conclusion that plaintiff's disability did not commence until November 12, 2019. (Dkt. # 22, pp. 8–9).**

---

[7] Detailed facts about Carly's impairments and medical and procedural history can be found in the R&R (ECF No. 22) and administrative transcript (ECF No. 10) and will not be repeated here, unless relevant to the objection under consideration.

This objection challenges the ALJ's principal finding—the June 30 Decision's RFC finding and disability onset date as it relates to Carly's physical impairments. This broad, general objection is covered in its entirety in the analyses below under each appropriate heading.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Here, the ALJ determined that, prior to November 12, 2019, Carly

> ha[d] the RFC to perform sedentary work as defined in 20 CFR 416.967(a) except [Carly] could no more than occasionally climb stairs or ramps, balance, stoop, or crouch; and never climb ladders of scaffolds, crawl, or kneel. [Carly] also needed to avoid concentrated levels of exposure to extreme cold temperatures or to vibrations. [Carly] was able to concentrate, persist, and maintain pace adequate for simple, routine, non-complex tasks in work setting presenting routine work situations and changes, with ordinary breaks at approximately two-hour intervals. She could have no exposure to dangerous hazards, such as working around unprotected heights or moving machinery parts. [Carly] could no more than occasionally push or pull with the lower extremities, and no more than occasionally perform overhead reaching bilaterally.

(R. 24.)

The ALJ acknowledged that, in making his RFC finding, he was required to consider all of Carly's impairments, including impairments that are not severe. (R. 19 (citing 20 C.F.R. §§ 416.920(e) & 416.945; SSR 96-8(p))). And the ALJ properly explained how the RFC accounts for each of Carly's physical impairments and supports his conclusion that Carly's disability-onset date is November 12, 2019. As explained below, the ALJ's June 30 Decision and its RFC findings are supported by substantial evidence and account for each of Carly's physical impairments. For these reasons and the reasons discussed below, this objection is **OVERRULED**.

**2. The [R&R] erred in concluding the ALJ considered more than just the prescription of a cane and walker in determining whether plaintiff's disability commenced prior to November 12, 2019 and that plaintiff failed to point to evidence to support functional limitations that would preclude plaintiff from all work. (Dkt. #22, pp. 8–9). Contrary to the [R&R]'s conclusion, plaintiff outlined the significant objective medical evidence ignored by the ALJ in reaching his finding that plaintiff's disability did not commence until November 12, 2019; given that none of the objective findings suddenly commenced on November 12, 2019 and were present well before that date. (Dkt. #22, pp. 8–9; Dkt. #15, pp. 28–30).**

The first part of this objection reiterates arguments made to, and dealt with by, the magistrate judge. *See Veney*, 539 F. Supp. 2d at 846; Pl.'s Br. at 28 [ECF No. 15] ("On remand, the ALJ again relied solely on Dr. Seamon writing a prescription for a cane/walker on November 12, 2019, in finding that plaintiff did not become disabled until November 12, 2019."). Rather than explaining the alleged significant medical evidence that the ALJ "ignored," Carly merely points to three pages of her summary judgment brief—the one filed before, argued to, and considered by the magistrate judge. The court declines Carly's invitation to select for her which specific record evidence, purportedly contained in her summary judgment brief, she means to use as the basis of her objection. In other words, the court will not make Carly's objections for her.

Beyond this, though, it is overwhelmingly untrue that the ALJ *only* considered Carly's cane and walker prescription in determining that her disability commenced on November 12, 2019, and equally untrue that the R&R erred in concluding the same. The ALJ considered in detail Carly's headaches, borderline obesity, and each of the following condition listings or rulings:

- Listing 1.18                  (abnormality of a major joint(s) in any extremity);
- Social Security Ruling 12-2p      (fibromyalgia);

- Listing 11.14                          (peripheral neuropathy);
- Social Security Ruling 14-2p           (diabetes mellitus);
- Listing 14.09                          (inflammatory arthritis);
- Listing 5.06                           (inflammatory bowel disease);
- Listing 5.08                           (weight loss due to any digestive disorder);
- Listing 12.06                          (anxiety and obsessive-compulsive disorders); and
- Listing 12.08                          (personality and impulse-control disorders).

(*See* R. 20–23.)

As it relates to Carly's knee problems,[8] the ALJ went through a detailed analysis of them and the associated timeline of pertinent events and evidence. After considering Carly's allegations about her knees, including the objective medical evidence,[9] the ALJ concluded that, prior to November 12, 2019, Carly was limited to sedentary work with reduced postural and environmental demands as set forth in his challenged RFC finding. The ALJ went on to explain why the record does not support further RFC limitations for the time period before November 12, 2019.

---

[8] The court here gives a detailed recitation of the ALJ's consideration pertaining to Carly's knees because that is what the section of Carly's brief, cited to in her objection, focuses on. The court finds that the ALJ's decision was supported by substantial evidence in all regards, including all physical, mental, and subjective components. Its focus here is based on what Carly has objected to and cited to in support, and it is not a suggestion that Carly's knees are her only impairment.

[9] In this regard, the ALJ expressly considered the fact that Carly dislocated her right knee in April 2017 and was discovered to have multiple ligament injuries; that a January 2018 physical showed bilateral knee tenderness with stabilizing braces in place and decreased range of motion in the right knee and that she was diagnosed with gout of both knees and fibromyalgia; that she had knee surgery in May 2018 with repair and reconstruction of multiple ligaments; that after the surgery she continued to report knee pain and was treated for an incisional infection; that Carly discontinued physical therapy because she said it hurt too much; that in August 2018 she reported increased knee pain but that she had been climbing stairs and "may have overdone it" and that an x-ray of the right knee showed moderate medial joint space narrowing, osteophytes, and small joint effusion and that she was referred to pain management and physical therapy; that an October 2018 right knee x-ray showed bone-on-bone medial contact and the left knee x-ray showed moderate medial compartment arthrosis, and that she was at that time referred to pain management and told that she was too young for knee replacements; and that she continued to complain of pain in both knees after that. (R. 26.)

As to the establishment of November 12, 2019 as the applicable onset date, the ALJ considered the fact that Carly used a cane after her May 2018 right knee surgery (R. 888), but also that records indicate she did not use a cane with any regularity until she was prescribed a cane and walker on November 12, 2019. (R. 26.) The ALJ did not blindly or solely consider that fact, nor was his consideration of that fact, together with the other Record evidence, in error. The ALJ considered that: in July 2018, Carly told a provider that her right knee was healing well, though she continued to do physical therapy and wear a knee brace, and that her gait and station were at that time within normal limits (R. 806); another treatment note from August 2018 reflects no obvious difficulty with ambulation (R. 831–35)[10]; Carly reported significant right knee pain in August 2018, but it was noted that "instability has not been an issue and she does feel more confident on the knee" (R. 871; progress note of Jesse Seamon, M.D.); at that time, Carly had 1+ ligament laxity but with good restraint and endpoints, and Carly had 5/5 strength throughout, and intact sensation to light touch in all dermatomes (R. 873) (also noting that "she has not done her PT, discussed with her that she will not optimize her outcome without PT"); in October 2018, Carly exhibited good stability and improved quad tone in her right lower extremity, and walked without an assistive device, though tenderness and swelling were noted in both knees (R. 855–56); Carly's pain complaints were conservatively managed with steroids and muscle relaxers (R. 853; 869 (also noting Ibuprofen prescription)); physical examinations through early 2019 showed that Carly wore a right knee

---

[10] This August 23, 2018 Lewis Gale Physicians Progress Note by Nurse Practitioner Nottingham actually indicates that Carly had "Increased Fall Risk Factors: *Difficulty ambulating (walks with cane or walker) s/p knee surgery.*" (*See* R. 835.) Nevertheless, this inaccuracy by the ALJ constitutes harmless error because, taken in its broader context and considered against the entire record, the ALJ's findings are still supported by substantial evidence. And remand is not required for harmless errors. *See Patterson v. Comm'r*, 846 F.3d 656 (4th Cir. 2017).

brace, but was not noted to have any obvious gait problems (R. 853–54 (dated November 2, 2018); 1073 (dated April 3, 2019))[11]; Carly's mental health provider described her gait and station as "within normal limits" in [November of] 2019 (R. 971[12]; 988); during orthopedic encounters in May 2019 and July 2019, Carly and her provider (Dr. Seamon) discussed plans for a right knee total replacement, but Carly was not noted to use or medically require a hand-held assistive device during either encounter (R. 1021–25); that Carly walked with a limp in July 2019, but was not noted to use a cane (R. 1021); Carly was not noted to use a hand-held assistive device at a July 2019 primary care encounter (R. 1057) (noting "unsteady gait"); Carly reported that she was planning to go forward with a knee replacement, but that she indicated that her pain had improved with tramadol and supportive care (R. 1056); during a July 2019 urgent care visit, Carly's gait and station were described as normal (R. 1096); during subsequent urgent care visits in September 2019 and October 2019, physical examinations showed some tenderness, crepitus, and/or swelling in the knees, but normal range of motion and full strength against resistance, and again, no noted use of a hand-held assistive device (R. 1101; 1105); and when Carly was prescribed a cane and walker on November 12, 2019, she said that she had "lost her cane" and did not use a walker as she had given hers to a friend. (June 30 Decision at 26–27.)

---

[11] The medical notes from the November 2018 and April 2019 appointments actually indicate that, during each of these visits, Carly had demonstrated an "unsteady gait." (*See* R. 853; 1073.) Nevertheless, this inaccuracy by the ALJ constitutes harmless error because, taken in their broader context within the totality of the record evidence, the ALJ's findings are still supported by substantial evidence.

[12] The court also notes that this November 2018 medical note by Avenues to Wellness's Medication Management Services reflects that Carly reported "still having *some* pain with her knee (post[-]surgery) [but that] she is no longer on any pain meds." (R. 971 (emphasis added).) This further tends to show that Carly's knee condition was, at least for some time, improving after her knee surgery and during her recovery period.

Based "on the overall record" (as just described)—*and* the supported-by-substantial-evidence conclusion that Carly was not regularly using or medically required to use a hand-held assistive device prior to November 12, 2019—the ALJ found that the challenged RFC accommodated Carly's knee problems prior to the disability onset date. (R. 27.) The ALJ determined that Carly's RFC prior to November 12, 2019 was such that she could perform work that existed in substantial numbers in the national economy. *Cf. Presnell v. Colvin*, No. 1:12cv299, 2013 WL 4079214, at *4 (W.D.N.C. Aug. 13, 2013) ("Consideration does not require favorable consideration."). Even a cursory review of the record leads to the ineluctable conclusion that Carly's objection that the ALJ *only* considered the cane and walker when determining the disability onset date is meritless. As discussed herein, the ALJ's decision was supported by substantial evidence. (*See* R&R at 8–10.)

It is also untrue that the ALJ "ignored" significant objective medical evidence when making his findings. "[A]n ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed in the Administrative Record." *Blackwell v. Colvin*, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2013) (quoting *Parks v. Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill. 1991)); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."). And each singular piece of Record evidence listed by Carly in her summary judgment brief need not have been expressly referenced by the ALJ.

Moreover, it is not apparent from Carly's objection what specific medical evidence Carly claims the ALJ "ignored." Instead, Carly gives a record citation to her summary

judgment brief where she argues that "the ALJ acknowledged significant problems with plaintiff's lower extremities indicating greater limitations in plaintiff's lower extremities prior to November 12, 2019," and then cited two full pages of references to the medical records about Carly's knees, with particular emphasis on her right knee. (*See* Pl.'s Br. at 28–30 [ECF No. 15].) Carly expresses that those two full pages of references are pieces of the Record that *"the ALJ acknowledged"* (as opposed to "ignored," as she now asserts in her objection). (*Id.*) As just explained, the ALJ provided a thorough recitation of the knee-related Record evidence, and the R&R properly acknowledged and summarized it when concluding that substantial evidence supported the ALJ's conclusions. (*See* R&R at 7–10.) Carly simply disagrees with the ALJ's findings, but they are supported by substantial evidence.

Finally, despite Carly's current claims, the ALJ never stated or implied that Carly's knee problems "suddenly commenced" on November 12, 2019. His thorough review of the medical records indicates that he merely (and correctly) concluded that the RFC, prior to that date, permitted her to perform certain sedentary work sufficiently available in the national economy. In sum, the R&R is correct that the ALJ's conclusions about Carly's knee, and when that condition constituted a disability, is supported by substantial evidence and must be affirmed. *See* 42 U.S.C. § 405(g); *Perales*, 402 U.S. at 401.

Accordingly, Carly's objections are **OVERRULED**.

3. **The [R&R] erred in concluding the ALJ considered more than just the prescription of a cane and walker in determining whether plaintiff was disabled before November 12, 2019. (Dkt. #22, p. 9). The ALJ acknowledged plaintiff's significant problems and limitations with her lower extremities but erroneously concluded the problems did not become severe until the date Dr. Seamon prescribed the cane for plaintiff. (Dkt. #22, p. 9). In support of its conclusion, the [R&R] erroneously asserted that the ALJ does not have to address every piece of inconsistent**

**evidence. (Dkt. #22, p. 9). The ALJ is required to address evidence contrary to his findings and that is exactly what the ALJ failed to do in plaintiff's case.** *See* <u>Mascio v. Colvin</u>**, 780 F.3d 632, 636 (4th Cir. 2015). The [R&R] acknowledged the ALJ did not address evidence contrary to his findings and consequently, remand is warranted. (Dkt. #22, pp. 9-10).**

The first part of this objection is the same as the first part of Carly's second objection, has already been disposed of as utterly unfounded, and is again **OVERRULED**.

Moreover, Carly's handwaving at *Mascio v. Colvin* does not bolster her objection that "the [R&R] acknowledged the ALJ did not address evidence contrary to his findings and consequently, remand is warranted. (citing *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)) (Dkt. #22, pp. 9-10)." The Fourth Circuit has held that "'[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). *Mascio* does not stand for the proposition that an ALJ must necessarily address every piece of Record evidence that cuts against his determination. Instead, in *Mascio*, remand was appropriate because it was a case where the ALJ "fail[ed] to assess claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate[d] meaningful review." *Mascio*, 780 F.3d at 636. Here, the court was not "left to guess" about how the ALJ arrived at his conclusions on Carly's ability to perform relevant functions before November 12, 2019. In other words, the ALJ's narrative built a logical bridge between the evidence and his RFC findings. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)

(observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

The ALJ provided a thorough narrative discussion and addressed evidence that was inconsistent with his finding. For example, Dr. Seamon's May 6, 2019 letter stating that Carly was "severely disabled,"[13] was properly considered under the five factors in 20 C.F.R. § 416.920(c): (1) supportability, (2) consistency, (3) relationship, (4) specialization, and (5) other factors, the first two of which must be, and are, discussed in the June 30 Decision. (R. 29–30.)

It is the ALJ's prerogative to determine disability, not Dr. Seamon's. *See* 20 C.F.R. § 416.927(d)(1). Dr. Seamon's statement that Carly is "severely disabled" is therefore irrelevant to the ultimate determination this court, and the ALJ, were required to make. 20 C.F.R. § 416.920(b)(c). Nevertheless, the ALJ found partially persuasive Dr. Seamon's statement that Carly "has limited use of both legs for ambulation or prolonged standing" to the extent her documented knee problems "support a restriction to sedentary work with no more than occasional pushing or pulling with the bilateral lower extremities." (R. 30.) The ALJ pointed to the weight of evidence supporting his conclusion. (*See, e.g.*, R. 1021–25, 1057, 1096, 1101, 1105.) The ALJ also considered that Dr. Seamon—even at the time he wrote his letter—did not identify a medical need for a hand-held assistive device. (R. 30.)

Ultimately, the ALJ found Dr. Seamon's statement that Carly "has limited use of both legs for ambulation of prolonged standing" not well-quantified, frustrating his evaluation of

---

[13] The letter further described that Carly has severe bilateral knee arthritis that was worse on her right, had limited use of both legs for ambulation or prolonged standing, and would ultimately require bilateral knee replacements. (*See* R. 1026.)

its supportability and consistency with other evidence. (R. 30.) The court finds this conclusion to be supported by substantial evidence.

Also, the Record evidence shows that Carly had improvement in her knees, both before *and after* Dr. Seamon's letter, through conservative treatment. For example, in July 2019, Carly reported that her knee pain had improved with tramadol and supportive care (although she also had an unsteady gait at that time). (R. 1056.) In a July 2019 urgent care visit, her gait and stance were described as normal. (R. 1096.) And in September and October 2019 she had normal range of motion and full strength against resistance (although she had swelling of the knee at that time). (R. 1101; 1105.)  As previously explained, the ALJ considered Dr. Seamon's statement, properly explained its impact on his decision, but ultimately disagreed with its legal conclusion couched as fact. (R. 30.)[14]

At bottom, Carly's disagrees with how the ALJ weighed the evidence, but his decision was supported by substantial evidence. Accordingly, Carly's objections are **OVERRULED.**

4.  **The R&R erred in concluding plaintiff did nothing more than question the ALJ's conclusion. (Dkt. #22, pp. 9–10). Contrary to the ALJ's conclusion, plaintiff identified significant objective evidence contrary to the ALJ's findings the ALJ failed to address, and remand is warranted; given that, the ALJ failed to address significant evidence contrary to his findings. (Dkt. #22, pp. 9–10).**

---

[14] Dr. Seamon's letter wasn't the only piece of opinion evidence the ALJ considered. The ALJ found the State agency medical consultant's, Wyatt S. Beazley, M.D., September 13, 2018 initial-level assessment finding that Carly could perform light-level lifting and carrying unpersuasive because evidence received at subsequent levels of review established greater limitations. (R. 29–30; R. 88–101.) Carly supported the ALJ not agreeing with *this* opinion evidence, although she now wants the ALJ to accept without question Dr. Seamon's legal conclusion that Carly was "severely disabled" as of his May 6, 2019 letter. The ALJ also considered the State agency medical consultant's January 24, 2019 physical assessment at the reconsideration level of review and found it mostly persuasive because it was supported by the medical consultant's consideration of Carly's medically determinable impairments, including bilateral knee osteoarthritis (but ability to ambulate without an assistive device), chronic right shoulder pain, and history of gout and fibromyalgia. (R. 29; R. 113–15.)

This objection is improper because it fails to object "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Midgette*, 478 F.3d at 621 (citing *Thomas*, 474 U.S. at 147–48). It is also recycled from the previous objections and points to no specific medical evidence for this court to consider other than Carly's brief's run-down of every single piece of medical evidence that she prefers. Because Carly has not identified the "significant evidence contrary to [the ALJ's] findings" to which she refers, this objection amounts to a general, conclusory objection and the court will not consider it. *See Diprospero v. Colvin*, 2014 WL 1669806, at *1; *Camper*, 2009 WL 9044111, at *2. This objection is **OVERRULED**.

5. **Due to the ALJ's failure to address evidence contrary to his findings, the [R&R] erred in concluding the ALJ provided a proper narrative discussion that built a logical bridge between the evidence and the ALJ's RFC findings. (Dkt. #22, p. 10). In addition, the [R&R] erred in concluding the ALJ's RFC determination is supported by substantial evidence. (Dkt. #22, p. 10).**

Carly fails to cite the evidence contrary to the ALJ's findings to which she refers, meaning this is an improper general objection. As previously explained, though, the ALJ provided a proper narrative discussion, and the court was not left to guess as to his reasoning. In other words, the ALJ built a logical bridge between the evidence and his RFC determination, which is supported by substantial evidence in all respects.[15] This objection is therefore **OVERRULED**.

B. **Objections Related to Mental Impairments Under SSR 96-8p**

6. **The [R&R] erred in finding the ALJ explained how plaintiff's moderate limitations in concentration, persistence, and pace were accommodated**

---

[15] The court will not repeat its analysis for this objection insofar as it overlaps with previous objections.

with a restriction to simple, routine, non-complex tasks and to limitations concerning hazards and that plaintiff's moderate limitations did not translate into limitations beyond those in the RFC. (Dkt. #22, p. 12). In support of its conclusion, the [R&R] pointed to the ALJ's findings that plaintiff's activities of daily living demonstrate 'at least some capability' regarding concentration, persistence, or pace. (Dkt. #22, p. 12.) The [R&R] imposed an incorrect standard; given that, it is not whether plaintiff has 'some capability' but instead, whether she can sustain concentration, persistence, or pace over the course of an eight hour workday. (Dkt. #22, p. 12). Furthermore, the [R&R] asserts that the ALJ explained his reasoning, but it is clear in the ALJ's decision that he simply summarized the medical evidence and then rendered his conclusions without actually explaining how he arrived at his conclusions. (Dkt. #22, p. 12, R. 23–24).

The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p at *7; *see also Meadows v. Astrue*, No. 5:11CV00063, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012), *R&R adopted*, No. 5:11CV00063, 2012 WL 4005455 (W.D. Va. Sept. 12, 2012). The ALJ did so here.

As discussed above, the ALJ acknowledged Carly's mental impairments. (*See* R. 20 (noting Carly's severe medically determinable impairments of depression and anxiety, among others).) And as previously explained, the ALJ considered listings 12.06 (anxiety and obsessive-compulsive disorders) and 12.08 (personality and impulse-control disorders) when determining that Carly's mental impairments, singly or in combination, do not result in either an extreme limitation or two marked limitations. (R. 22.)

As it relates to Carly's moderate limitations in concentrating, persisting, or maintaining pace, the ALJ found that those were accommodated in the RFC's restriction to simple, routine, non-complex tasks in work settings presenting routine work situations and changes with ordinary breaks at approximately two-hour intervals, as well as by the RFC's limitation

concerning hazards taking in to account her subjective reports of poor sleep and reduced concentration. (R. 23.) In so doing, the ALJ explained that some medical evidence indicates that Carly had "tangential at times" thought process and "impaired attention/concentration," but that "treatment notes otherwise describe the claimant as alert and oriented, without any obvious distractibility, lethargy, or slow thinking, speech, or movements." (R. 22.) He gave an example from a February 2019 mental status examination where Carly, despite having "impaired" attention/concentration and "tangential at times" thought process, nevertheless had an alert and oriented appearance, good fund of knowledge, coherent language, ability to repeat phrases, and coherent and normal speech. The ALJ also considered Carly's reports of caring for her children and found that this "demonstrated at least some capability in this area." (R. 23.) "Based on the foregoing *and other evidence discussed in [his] decision*," the ALJ found that the RFC restrictions accommodated her moderate limitations in concentrating, persisting, or maintaining pace. (R. 23 (emphasis added).)

The *other evidence discussed in his decision* to which the ALJ refers is substantial as it relates to Carly's mental impairments. (*See* R. 22–23; 28.) He analyzed her mild limitations related to understanding, remembering, and applying information, as well as in terms of interacting with others, including specific references to record evidence. (R. 22.) He discussed her no-more-than-mild limitation in terms of adapting or managing herself, again supported by specific record references. (R. 23.) The ALJ concluded that, because Carly's mental impairments do not cause at least two marked limitations or one extreme limitation, the "paragraph B" criteria were not satisfied. (R. 23.) He also found that, based on his analysis, "[t]here is no evidence that changes or increased demands have led to a deterioration in the claimant's functioning,

such as evidence that the claimant became unable to function outside of the home or a more restrictive setting without substantial psychosocial supports." (R. 23.) The ALJ found that Carly's mental impairment and limitation "symptoms appear reasonably well managed with routine treatment." (R. 28.) He provided specific examples of medical evidence supporting his conclusion, including that Carly reported that her medications were working well; that a mental status examination showed a neatly-dressed and well-nourished appearance; coherent and normal speech; logical though "tangential at times" thought process; intact associations; no psychosis; no suicidal or homicidal ideation; "impaired" attention/concentration but alert and oriented appearance; fair judgment and insight; broad and full range affect; euthymic mood; intact recent and remote memory; good fund of knowledge; coherent language; ability to repeat phrases (R. 988–89 (Nov. 5, 2019)); and that other mental status examinations over the relevant period showed similar findings. (*See* R. 806 ("symptoms of anxiety and depression persist" but "she feels as if meds are helpful in mood stability") (July 5, 2018); R. 979 ("stressed with knee" but "feels like meds are working well right now," "mood is ok," and findings similar to the Nov. 5, 2019 medical note) (Feb. 21, 2019); R. 982–83 (Jul. 25, 2019)). (R. 28.) Again, "[b]ased on the totality of the evidence, the [ALJ found] that the above mental limitations are appropriate." (R. 28.)

It is true that the ALJ (appropriately) considered that Carly's "activities of daily living, such as caring for her children, also demonstrate at least some capability in this area." (R. 23.) But, as explained above, the ALJ relied on much more than Carly's caring for her children when accounting for her mental impairments in her RFC. For example, Carly had "tangential thoughts at times and impaired attention and concentration," but "treatment notes otherwise

- 23 -

describe the claimant as alert and oriented, without any obvious distractibility, lethargy, or slow thinking, speech, or movements." (R. 22 (citing to specific portions of the record).)

Moreover, nowhere in the June 30 Decision does the ALJ say that he relied *only* on the fact of Carly's daily living activities, including taking care of her children, when formulating his RFC to account for and accommodate her mental impairments. And nowhere in the June 30 Decision does the ALJ say that the *legal standard* "some capability" was applied, as opposed to it being a simple reference to a fact in the record. The ALJ never stated—and his analysis does not suggest that he concluded—that Carly's daily activities, including taking care of her children, necessarily meant that she *ipso facto* had the ability to sustain work for "8 hours a day, for 5 days a week, or an equivalent work schedule" as required. *See* SSR 96-8. In other words, stating that one piece of record evidence—Carly's daily activities, including taking care of her children—tended to show at least "some capability" in this area is not the equivalent of supplanting the appropriately-applied legal standard with a "some capability" standard. To the contrary, as explained above, the ALJ relied on much more than that one indicia of residual functional mental capacity when making his RFC determination. And he applied the appropriate standard when formulating his RFC and explaining how it accounts for Carly's impairments. In sum, the ALJ did not apply the wrong legal standard by pointing to this relevant record evidence.

As to the RFC limitations concerning hazards, the ALJ expressly found that these were appropriate accommodations because Carly's subjective reports of poor sleep and reduced concentration "could impact her ability to react to such hazards." (R. 23.) It hardly needs explaining that someone who is tired from sleeping poorly and has reduced concentration

could have difficulty reacting to hazards. Carly's suggestion that this well-reasoned logic "simply summarized the medical evidence and then rendered [the ALJ's] conclusions without actually explaining how he arrived at his conclusions" is erroneous.

Accordingly, these objections are **OVERRULED**.

7. **The [R&R] erred in concluding the ALJ posed proper hypothetical questions to the vocational expert and erred in concluding the ALJ properly addressed plaintiff's ability to sustain work activity over the course of an eight hour workday. (Dkt. #22, p. 12–13). The [R&R] failed to acknowledge the ALJ's questions to the vocational expert did not actually alert the vocational expert to plaintiff's moderate limitations in concentration, persistence or pace. (Dkt. #22, pp. 12–13). In support of its conclusion, the [R&R] pointed to the ALJ including a limitation of non-complex tasks in routine work situations with no changes and avoidance of dangerous hazards as proof the ALJ addressed plaintiff's moderate limitations in concentration, persistence, or pace; however, it is unclear how those limitations actually addressed or accommodated plaintiff's moderate limitations or alerted the vocational expert to the moderate limitations. (Dkt. #22, p. 13).**

The ALJ's question to the vocational expert, Ms. Deal, was as follows:

> If we have an individual age in her late thirties to early forties with a high school education, with past work primarily as a cashier, kitchen helper, customer service work identified as at the light skilled level and just if those characteristics were applied to a hypothetical individual and such individual was capable of engaging in sedentary level work that would be work of standing and walking at no more than two hours in a workday, sitting for at least six or even up to eight as required for the job, no more than ten pounds lifting, occasionally nominal rates frequently, no more than occasional climbing of steps or stairs or ramps or no more than occasional balancing, stooping or crouching, a job that would not require any climbing of ladders or scaffolds or crawling or kneeling, this individual would need to, this hypothetical individual would need to avoid concentrated levels of exposure to extreme cold temperatures or to vibrations, *the individual would have concentration, persistence and maintaining a pace adequate for simple, routine tasks that would be non-complex tasks in work settings presenting routine work situations and changes. This would all be work or ordinary and regularly scheduled breaks would be afforded at approximately two-hour*

> *intervals and no exposure to hazards such as working around unprotected heights or moving machinery, moving machinery parts, things of that nature in terms of dangerous hazards.* Would there be work you could identify for such a hypothetical individual that exists in the U.S. economy?

(R. 81–2 (emphasis added).)

"For a vocational expert's opinion to be 'relevant or helpful,' it must be responsive to a proper hypothetical question. A proper hypothetical question 'fairly set[s] out all of claimant's impairments' that the record supports." *Britt v. Saul*, 860 F. App'x 256, 263 (4th Cir. 2021) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). "Put another way, for our review an administrative law judge can rely on the answer to a hypothetical question so long as the question 'adequately reflect[s]' a residual functional capacity that is supported by sufficient evidence." *Britt*, 860 F. App'x at 263 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)); *see also Mascio*, 780 F.3d at 638 (noting that a hypothetical question that includes a correctly determined residual functional capacity is a proper hypothetical). "[T]he hypothetical question need not list each impairment; it need only give the claimant's age, education, experience, and residual functional capacity." *Britt,* at 263. Here, the ALJ's hypothetical did so.

As it relates to that portion of Carly's RFC relating to accommodating her mental impairments, the ALJ included in his hypothetical that

> the individual would have concentration, persistence and maintaining a pace adequate for simple, routine tasks that would be non-complex tasks in work settings presenting routine work situations and changes. This would all be work or ordinary and regularly scheduled breaks would be afforded at approximately two-hour intervals and no exposure to hazards such as working around unprotected heights or moving machinery, moving

> machinery parts, things of that nature in terms of dangerous hazards.

(R. 82.) As discussed at length above and as the R&R stated, the ALJ properly reviewed the record evidence as it relates to Carly's mental impairments and in making his RFC determination to account for them. (*See* R&R at 13.) The ALJ's determinations are, in this and all regards, supported by substantial evidence. *Mascio*, 780 F.3d at 634. And, the ALJ's hypothetical to the vocational expert expressly accounted for those limitations.

Lastly, Carly is simply wrong that the ALJ did not properly address her ability to sustain work over the course of an eight-hour workday. The eight-hour workday requirement was expressly baked into the ALJ's hypothetical question to the vocational expert: ". . . such individual was capable of engaging in sedentary level work that would be work of standing and walking at no more than two hours in a workday, sitting for at least six or even up to eight as required for the job . . . ." (R. 82.) Moreover, the purpose of determining an RFC is to assess "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." 20 C.F.R. § 404.1545(b); SSR 96-8, 1996 WL 374184 at 1-2. (*See* R&R at 12 n.7.) The predicate on which the RFC—and the ALJ's entire June 30 Decision—implicitly rests, and as expressly relayed to the vocational expert, is that it accounts for an eight-hour workday (or equivalent, as the case may be).

For these reasons, Carly's objections are **OVERRULED**.

8. **The [R&R] erred in concluding the ALJ explained how his RFC findings address or accommodate plaintiff's moderate limitations in concentration, persistence, or pace and erred in concluding the ALJ's RFC is supported by substantial evidence. (Dkt. #22, p. 13). In support of its conclusion, the [R&R] asserted the ALJ carefully analyzed each**

**facet of plaintiff's mental health treatment records and carefully analyzed each facet of her mental health impairments. (Dkt. #22, p. 13). The [R&R]'s conclusion is in error; given that, the [R&R] failed to recognize the ALJ's discussion of the mental health medical evidence was at stages 2 and 3 as to whether or not plaintiff's impairments met or equaled a listing and not at stages 4 and 5 and the RFC findings where a more detailed analysis is required under SSR 96-8p. (Dkt. #22, p. 13). The [R&R] erred in concluding substantial evidence supports the ALJ's assessment of plaintiff's mental impairments under SSR 96-8p. (Dkt. #22, p. 13).**

The first two sentences, and the last sentence, of Carly's four-sentence objection, overlap with those already addressed in overruling her sixth objection. Moreover, the ALJ's findings are supported by substantial evidence. For these reasons, they are **OVERRULED**. The court will therefore address anew only the third part of Carly's eighth objection.

In his June 30 Decision, the ALJ expressly acknowledged that the limitations identified in the "paragraph B" criteria are not his RFC assessment

> but are used to rate the severity of the mental impairments at steps two and three of the sequential evaluation process. The mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the [ALJ] had found in the 'paragraph B' mental functional analysis.

(R. 23.) After explaining that his *preceding* analysis was under steps two and three, and that his *following* analysis was under steps four and five—and expressly recognizing the appropriate legal standard under SSR 96-8p—the ALJ went on to provide the necessary detailed findings regarding Carly's mental-impairment-accommodating RFC:

> Finally, regarding the alleged mental impairments and limitations, the claimant's allegations are partially consistent with other evidence insofar as she receives outpatient management for mood and anxiety symptoms (11F, 18F, 20F). However, the symptoms appear reasonably well managed with routine

- 28 -

> treatment. For instance, in November 2019, the claimant reported some moodiness in the context of increased situational stressors, but said she felt like her medications were working well (18F/19). A mental status examination showed neatly dressed and well-nourished appearance, coherent and normal speech, logical though "tangential at times" thought process, intact associations, no psychosis, no suicidal or homicidal ideation, and 'impaired' attention/concentration but alter and oriented appearance, fair judgment and insight, broad and full range affect, euthymic mood, intact recent and remote memory, good fund of knowledge, coherent language, and ability to repeat phrases (18F/20). Other mental status examinations over the relevant period show similar findings (e.g., 9F/8, 18F/10, 18F/14). Based on the totality of the evidence, the undersigned finds that the above mental limitations are appropriate.

(R. 28.) As previously discussed, the ALJ's findings adequately explain why the RFC accounts for Carly's mental impairments, are supported by substantial evidence, and comport with the requirements of SSR 96-8p. Carly is incorrect in arguing that the ALJ did not perform the necessary detailed fact-finding required under steps four and five, but rather only steps two and three. The third part of Carly's eighth objection is therefore **OVERRULED**.

## C.  Objections to Findings Regarding Subjective Complaints

9.  **The [R&R] erred in concluding substantial evidence supports the ALJ's analysis of plaintiff's subjective complaints and erred in concluding plaintiff is capable of performing work at the level stated in the ALJ's opinion. (Dkt. #22, p. 15). The [R&R] erred in asserting plaintiff did not point to any case law or evidence in the medical record to question the ALJ's conclusions. (Dkt. #22, p. 15). Contrary to the assertion of the [R&R], plaintiff pointed to specific case law the ALJ failed to follow in his assessment of plaintiff's allegations and also pointed to specific evidence the ALJ ignored that contradicted the ALJ's assessment of plaintiff's allegations. (Dkt. #22, p. 15, Dkt. #15, pp. 28–33, 35).**

The ALJ acknowledged Carly's various subjective complaints and allegations—she has persistent pain in both knees that worsened after her May 2018 right knee surgery; she used a cane and walker; she had occasional right shoulder pain; she had IBS symptoms four or five

days per week; she could only sit for one or two hours at a time and had to elevate her legs for

two hours per day; she could only do activity standing for 20 or 30 minutes before needing to

rest her legs; she lied down for various lengths of time throughout the day, depending on the

pain intensity; she had difficulty bending or stooping and relied on her children for help with

household chores; and that she had difficulty concentrating, fear of being around people, and

two to three panic attacks per day, among other things.

It well-settled that the ALJ is tasked with making credibility determinations. Under the

applicable regulations:

> [T]he determination of whether a person is disabled by pain or
> other symptoms is a two-step process. First, there must be
> objective medical evidence showing 'the existence of a medical
> impairment(s) which results from anatomical, physiological, or
> psychological abnormalities and which could reasonably be
> expected to produce the pain or other symptoms alleged.'

*Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (quoting 20 C.F.R. §§ 416.929(b) &

404.1529(b)). Second, once a claimant has "met her threshold obligation of showing by

objective medical evidence a medical impairment reasonably likely to cause the pain claimed,

the intensity and persistence of the claimant's pain, and the extent to which it affects her ability

to work, must be evaluated." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(2)).

Under the regulations,

> this evaluation must take into account not only the claimant's
> statements about her pain, but also 'all the available evidence,'
> including the claimant's medical history, medical signs, and
> laboratory findings, any objective medical evidence of pain (such
> as evidence of reduced joint motion, muscle spasms,
> deteriorating tissue, redness, etc.), and any other evidence
> relevant to the severity of the impairment, such as evidence of
> the claimant's daily activities, specific descriptions of the pain,
> and any medical treatment taken to alleviate it.

*Id.* (cleaned up). In other words, after determining that a claimant has a medical condition that reasonably could cause the pain "in the amount and degree" she alleges, the ALJ must determine, based on the available evidence, whether a claimant actually suffers to the degree she claims.

At step one, the ALJ found that Carly's medically determinable impairments could reasonably be expected to cause her alleged symptoms; but at step two, he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical and other record evidence. (R. 26.) Substantial evidence supports the ALJ's findings regarding Carly's subjective complaints.

The ALJ relied on extensive evidence pertaining to Carly's knee problems, as detailed earlier in this Opinion. (*See* R. 26–27.) He found that Carly "had full wrist motion and was able to make full composite grip bilaterally" and was reported to be doing quite well after her right carpal tunnel release surgery. (R. 27.) She was noted to be conservatively managing her right shoulder and upper back symptoms. (R. 27-28.) The ALJ noted that she appeared in no acute distress related to her IBS, and that her diabetes was noted to be under "good control." (R. 28.) As to Carly's mental impairments, the ALJ found that her symptoms appeared reasonably well managed with routine treatment, noting, for example, that Carly reported that her medications were working well, and that she was reported to have appeared and performed well at mental status examinations. (R. 28.)

The court is not empowered to re-weigh the evidence or make credibility determinations, *see Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589), and it will not do so here. The ALJ's determinations relating to Carly's subjective

complaints are supported by substantial evidence. This part of Carly's objection is therefore **OVERRULED**.

The second part of Carly's objection under this heading simply points this court to numerous pages of her summary judgment brief, apparently inviting this court to select which "specific case law" and "specific evidence" in those pages Carly means to use as the basis of her objections, and then formulate specific objections for her. This amounts to an impermissible general objection to the R&R as a whole—which is the same as no objection at all—and is simply an invitation for the court to reweigh the evidence and second-guess the ALJ's credibility determinations. The court will not make Carly's objections for her, and her objection is **OVERRULED**.

## V. CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's June 30 Decision is supported by substantial evidence. As such, Carly's objections will be overruled, Judge Ballou's R&R will be adopted in its entirety, Carly's summary judgment motion will be denied, and the Commissioner's summary judgment motion will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 21st day of March, 2023.

_/s/ Thomas T. Cullen_
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE